UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-61374-CIV-COHN/SELTZER

1-800-411-I.P. HOLDINGS, LLC,

    Plaintiff,

v.

GEORGIA INJURY CENTERS, LLC, 411
MARKETING AND MANAGEMENT, INC.,
BRIAN D. VEAL, D.C., and MATTHEW C.
SILVESTRO, D.C.,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Amended Complaint [DE 27] ("Motion"). The Court has reviewed the Motion and the record in this case, and is otherwise advised in the premises. For the reasons discussed herein, the Court will dismiss Plaintiff's claim for cybersquatting, and will deny the Motion in all other respects.

## I.  BACKGROUND

This action arises from Defendants' alleged wrongful attempts to profit from Plaintiff's goodwill in the marketplace. Plaintiff 1-800-411-I.P. Holdings, LLC ("IP Holdings") owns several trademark registrations relating to medical and legal referral services for accident victims, including 1-800-411-PAIN (the "411 Pain Marks"). DE 26 (Amended Complaint) ¶¶ 9–12. In 2013, IP Holdings' agents entered into a license agreement with Defendants, allowing Defendants to use the 411 Pain Marks in connection with their own referral services. Id. ¶¶ 6, 21, 24. IP Holdings also registered

several internet domains similar to the 411 Pain Marks, such as 411pain-atlanta.com (the "411 Pain Domains"), and linked those domains to Defendants' website. Id. ¶¶ 24–27. Consumers visiting the 411 Pain Domains therefore were directed to Defendants' website.

IP Holdings terminated Defendants' license to use the 411 Pain Marks on March 31, 2014. Id. ¶ 21. Defendants thus removed IP Holdings' licensed content from their website, and replaced it with their own proprietary content. However, IP Holdings alleges that the new content on Defendants' website remains confusingly similar to the 411 Pain Marks. Id. ¶¶ 26–27. IP Holdings also alleges that Defendants continue to use marketing tools confusingly similar to the 411 Pain Marks, such as the 1-800-HURT-911 telephone hotline. Id. ¶¶ 31–32.

IP Holdings further contends that Defendants took unfair advantage of the 411 Pain Domains. Even after IP Holdings terminated Defendants' license, its 411 Pain Domains directed visitors to Defendants' website. Id. ¶ 32. IP Holdings alleges that Defendants knew the 411 Pain Domains were still directing visitors to their website, and designed the website to trick consumers into thinking that their services were somehow related to IP Holdings' 411 Pain Marks. Id.

IP Holdings has asserted the following claims on this basis: (1) cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); (2) trademark infringement under 15 U.S.C. § 1114; (3) trademark dilution under 15 U.S.C. § 1125(c); (4) trademark dilution under Fla. Stat. § 494.151; (5) unfair competition under 15 U.S.C. § 1125(a); and (6) unfair competition under Florida's

common law. Am. Compl. ¶¶ 47–56. Defendants have responded with the Motion, seeking to dismiss the Amended Complaint for failure to state a claim.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court shall grant a motion to dismiss where the factual allegations of the complaint cannot support the asserted cause of action. Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006) (per curiam). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations must give a defendant fair notice of the plaintiff's claims and the grounds upon which they rest. Id. Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

A complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 550 U.S. at 555. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. A well-pled complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." Id. at 556 (internal quotation marks omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

## III. DISCUSSION

### A. IP Holdings Cannot State a Claim for Cybersquatting

In the Motion, Defendants attack the entirety of the Amended Complaint as insufficiently pled. However, Defendants devote special attention to IP Holdings'

3

cybersquatting claim. Defendants argue that because IP Holdings itself controls the 411 Pain Domains, they cannot be liable for cybersquatting at those domains. The Court agrees with Defendants, and will dismiss the cybersquatting claim.

IP Holdings' cybersquatting claim arises under the ACPA. The ACPA creates a cause of action against a person who, in bad faith, "registers, traffics in, or uses" an internet domain name confusingly similar or, in some cases, dilutive to a mark. 15 U.S.C. § 1125(d)(1)(A). After IP Holdings' license agreement with Defendants expired, its 411 Pain Domains continued to direct internet traffic to Defendants' website. IP Holdings alleges that Defendants were aware of this traffic, and designed a website that infringed upon the 411 Pain Marks to take advantage of confused consumers who thought the 411 Pain Domains had directed them to a website offering services affiliated with IP Holdings. See Am. Compl. ¶¶ 31–32. IP Holdings alleges that Defendants thus used the 411 Pain Domains to capitalize on its reputation, resulting in liability under § 1125(d)(1)(A). Am. Compl. ¶¶ 47–50.

But the ACPA defines a narrow universe of potential defendants: A person may be liable on a cybersquatting claim "only if that person is the domain name registrant or that registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D). IP Holdings itself is the registrant of the 411 Pain Domains. Am. Compl. ¶ 24. On the other hand, Defendants were neither the "domain name registrant [n]or that registrant's authorized licensee" when they allegedly misused the 411 Pain Domains. See id. ¶¶ 21, 29–32. Accordingly, Defendants cannot be liable for cybersquatting under the ACPA. See 15 U.S.C. § 1125(d)(1)(D).

4

IP Holdings argues that Defendants could be liable parties under § 1125(d)(1)(D) because they were its authorized licensees at one time, even if the license had expired before any cybersquatting occurred. But as relevant to this suit, § 1125(d) creates a cause of action against someone who "is" a registrant's authorized licensee and who "uses" a domain name in bad faith. 15 U.S.C. § 1125(d)(1)(A), (D). The statute's use of the present-tense verb "is" in relation to whether a person is a registrant's authorized licensee who can be liable for bad-faith use of a domain name implies that the defendant must be a licensee at the time of the wrongful use for liability to attach. See Dawson v. Ameritox, Ltd., 571 F. App'x 875, 877 n.1, 879–80 (11th Cir. 2014) (per curiam) (addressing impact of present tense in context of statute prohibiting restraints on trade).

A broader view of the ACPA's purpose supports this statutory construction. "Congress enacted the [ACPA] in response to concerns over the 'proliferation of cybersquatting—the Internet version of a land grab.' The practice of holding domain names for ransom with an intent to profit directly from selling the domain name itself is the 'paradigmatic harm' targeted by the act." S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1246 (11th Cir. 2009) (per curiam) (citations omitted). A defendant may also engage in cybersquatting by using a deceptive domain name to divert consumers from a trademark owner's website. Id.; Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A., 734 F. Supp. 2d 1262, 1275 (M.D. Fla. 2010) (quoting DaimlerChrysler v. Net Inc., 388 F.3d 201, 204 (6th Cir. 2004)). Ransoming a domain name or diverting consumers by way of a deceptive domain name requires some degree of control by the offending party over the domain name. Imposing liability only on parties with control

over a domain name at the time of the alleged wrongdoing—such as the registrant or the registrant's licensee—thus comports with the ACPA's purpose of targeting cybersquatting.

In this case, IP Holdings itself registered the 411 Pain Domains, and has at all times controlled the domains. Defendants did not ransom the domains or use them as a tool to divert IP Holdings' internet traffic; their acts do not appear to be "cybersquatting" in the traditional sense of an internet domain held hostage. See Synergy Real Estate of Sw. Fla., Inc. v. Premier Prop. Mgmt. of Sw. Fla., LLC, No. 11-707, 2013 WL 5596795 at *2 & n.3 (M.D. Fla. Oct. 11, 2013) (In dismissing ACPA claim where Plaintiffs were domain registrants, noting that "Plaintiffs' inability to state a claim may . . . stem from the fact that the allegations do not seem to fit the definition of cybersquatting."), aff'd, 578 F. App'x 959 (11th Cir. 2014) (per curiam). The facts as IP Holdings has alleged them present a different picture: After IP Holdings ended its licensing arrangements with Defendants, it neglected to update the 411 Pain Domains to stop referring consumers to Defendants' website. IP Holdings thus diverted its own customers to Defendants. But now, IP Holdings seeks to extract compensation after-the-fact for the consumers it accidentally sent Defendants' way. The Court is skeptical that Congress intended to impose liability in these circumstances when it created a cause of action for cybersquatting under the ACPA. See id.

In sum, the ACPA prohibits a person who is a domain registrant or the licensee of a registrant from registering, trafficking in, or using a domain name confusingly similar to a trademark in bad faith. 15 U.S.C. § 1125(d)(1)(A), (D). Because Defendants were neither registrants nor licensees of the 411 Pain Domains at the time of the alleged

6

cybersquatting, they do not fall within the categories of persons potentially liable under the ACPA. See id. IP Holdings' cybersquatting claim thus fails as a matter of law, and will be dismissed.

### B. IP Holdings Has Sufficiently Pled Its Remaining Claims

Defendants attack the remainder of the Amended Complaint as a shotgun pleading. DE 27 at 9. Defendants also argue that the Amended Complaint is confusing and vague because it refers to them collectively as "Defendants." Id. The Court finds each of these arguments meritless.

Defendants first argue that the Amended Complaint is a shotgun complaint. The much-criticized and oft-dismissed shotgun complaint is one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). This approach to pleading creates a confusing complaint that fails to give the defendant sufficient notice of the basis for each claim against it. Id. at 1295 n.9.

But in the Amended Complaint, IP Holdings has not incorporated the entirety of its prior allegations into each successive count. In other words, the Amended Complaint is not a shotgun complaint. Instead, IP Holdings has pled a single section of general factual allegations relating to Defendants' attempts to trade on its goodwill in the marketplace (Am. Compl. ¶¶ 1–44), which forms the basis for each of its related trademark and unfair-competition claims (id. at 10–11). This approach of supporting multiple claims with a single section of general factual allegations does not

automatically violate the applicable notice pleading requirements. See SEC v. City of Miami, 988 F. Supp. 2d 1343, 1354–55 (S.D. Fla. 2013).

Moreover, upon review, the Amended Complaint does give Defendants sufficient notice of the claims against them. The document sets forth specific instances of alleged wrongdoing, including co-opting internet traffic from IP Holdings' websites (Am. Compl. ¶ 28), creating a website with content confusingly similar to the 411 Pain Marks (id. ¶ 30), and utilizing a slogan confusingly similar to the 411 Pain Marks (id. ¶ 34). These allegations are sufficient to put Defendants on notice of the basis for IP Holdings' trademark and unfair-competition claims.

The Court also rejects Defendants' contention that the Amended Complaint is confusing because it contains allegations pertaining to them collectively as "Defendants." See DE 27 at 9. A plaintiff may plead claims against multiple defendants by referring to them collectively, for example by referring to a group of defendants as "defendants." See Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997). These collective allegations are construed as pertaining to each defendant individually. Id. The practice only runs afoul of the applicable pleading standard where it denies a defendant notice of the specific claims against it. See Frazier v. U.S. Bank Nat'l Ass'n, No. 11-8775, 2013 WL 1337263 at *3 (N.D. Ill. Mar. 29, 2013) (holding that group pleading did not render complaint infirm where complaint provided fair notice of claims).

Collective references to defendants most often create problems when broad allegations are directed at a large and diverse group of defendants, leaving unclear just who is alleged to have committed which acts. See Pierson v. Orlando Reg'l Healthcare Sys., Inc., 619 F. Supp. 2d 1260, 1271–74 (M.D. Fla. 2009) (requiring repleader where

plaintiff used single defined term to refer to numerous individual doctors and business entities, and alleged varying involvement in complex peer-review process as to entire group), aff'd, 451 F. App'x 862 (11th Cir. 2012) (per curiam). But here, IP Holdings alleges that Defendants Brian Veal and Matthew Silvestro, acting through their companies, Georgia Injury Centers, LLC and its advertising wing, 411 Marketing & Management, Inc., collaborated to trade on IP Holdings' goodwill, and each participated in the conduct supporting each of the claims in this action. Am. Compl. ¶ 8. Under these circumstances, IP Holdings' use of the collective reference "Defendants" does not deprive Defendants of fair notice of the conduct attributed to them; it simply signals that Defendants are each alleged to have participated in the conduct at issue. The Court therefore declines to dismiss the Amended Complaint for failure to satisfy the applicable pleading standard.

## IV.  CONCLUSION

In sum, the facts as IP Holdings has alleged them cannot support a claim for cybersquatting under the ACPA. However, the remainder of the Amended Complaint provides Defendants with fair notice of the claims against them, satisfying the applicable pleading standard. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Amended Complaint [DE 27] is **GRANTED in part and DENIED in part** as follows:

1. Count I of the Amended Complaint [DE 26], for cybersquatting under 15 U.S.C. § 1125(d), is **DISMISSED with prejudice**.
2. Defendants' Motion to Dismiss Amended Complaint is **DENIED** in all other respects.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 2nd day of December, 2014.

*[signature]*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF